# JAMES W. GLOVER, LIMITED *v.* LEONARD K. FONG.

## NO. 2948.

Argued November 6, 1953.     Decided April 6, 1954.

### Towse, C. J., Le Baron and Stainback, JJ.

This is an action in tort for actual and punitive damages in the total sum of $92,515.40 arising from the alleged willful and malicious misconduct of the defendant in refusing to perform a purely ministerial duty required by statute. The injuries resulting from that conduct are alleged to have been suffered by the plaintiff in the loss of the use of money and in the incurring of legal expenses or attorney's fees and other expenses of litigation in successfully compelling the defendant to perform his statutory duty to draw warrants. The alleged wrongful conduct occurred when the defendant was auditor of the City and County of Honolulu and while the plaintiff was entitled to have certain warrants drawn in its favor. This misconduct is alleged in two counts of the second amended complaint. The second count alleges that the misconduct is a willful and malicious refusal to draw those warrants until it became necessary to bring mandamus and compel him to do so. The first count alleges in effect that such refusal was aggravated by a willful and malicious making by the defendant of a false return in those proceedings to defeat the relief therein sought and ultimately achieved. The alleged willful and malicious making of a false return under the first count is thus a particular phase or part of the alleged willful and malicious refusal under the second count and together constitute the wrongful conduct on which the action in tort for damages is based. With respect to the prior mandamus proceedings it is needless to state at large such proceedings as they are sufficiently set forth in *Glover* v. *Fong, Auditor,* 39 Haw. 308. A demurrer was sustained to the second amended complaint on the ground that (1) the first count "states no cause of action for the reason that it does not allege that the return was false in a material and necessary allegation of fact [and] legally sufficient," and that (2) the action as to the

second count is barred by the prior mandamus proceedings on the doctrine of the election of remedies. From the order dismissing the amended complaint, the plaintiff sues out the instant writ of error.

The specification of errors on which the plaintiff relies for reversal challenges the ground on which the demurrer was sustained by the trial judge and accordingly presents two main questions of law. One goes to the sufficiency of the first count and the other to the applicability of the doctrine of election of remedies so as to bar the action as to the second count.

Before stating the question of insufficiency, the allegations pertinent to it will be first considered as set forth in the first count. They are in substance that when faced with a plain ministerial duty to draw certain approved and preaudited warrants made payable to the plaintiff, the defendant willfully refused to perform that duty "for personal and political motives and out of malice toward plaintiff * * * and with intent to injure plaintiff and to put it to large expense," and when faced with an alternative writ of mandamus, he purported to show cause why he had not performed that duty by filing a return, the "material allegations" of which he "knew were false," and did so "wilfully and with intent to delay and/or prevent plaintiff from obtaining the monies lawfully due it." The defendant's continuing breach of ministerial duty before mandamus is further alleged to have been "malicious, wilful and arbitrary." After mandamus, it is additionally alleged, particularly with respect to the false return, to have been "wilfully and maliciously [done] with intent to injure the plaintiff [and] made in bad faith." The parts of the return alleged to be false are five of its paragraphs which the complaint identifies by number, states as to substance and characterizes as the "material allegations of fact which were false." It

would unduly burden this opinion to set out in detail those certain paragraphs, as so stated and characterized. Suffice it to say that they are destructive of the factual basis on which relief was sought and ultimately obtained in the prior mandamus proceedings and would have constituted complete defenses thereto had they not been false.

The question of insufficiency as the first of the two main questions presented relates only to the allegations of the first count which characterize the paragraphs of the return as well as the return itself. It is whether that count is insufficient because it does not further characterize those paragraphs, alleged to be "material" and "false," by alleging them to be also "necessary" and to further characterize the return, alleged to be "false," by alleging it to be also "legally sufficient." Assuming without deciding the materiality of those additional characterizations, they are mere conclusions of law which may be clearly drawn from the facts alleged and add nothing to the force and effect of those facts. The well-settled rule, therefore, applies that a complaint is sufficient if it alleges ultimate facts from which conclusions of law may be drawn and that those conclusions need not be pleaded. (*Miller v. City of Dayton,* 70 Ohio App. 173, 41 N. E. [2d] 728; *State v. Hardy,* 218 Ind. 79, 30 N. E. [2d] 974; *State v. McCook,* 109 Conn. 621, 147 Atl. 126; *Walter v. Calloway,* 99 Cal. App. [2d] 675; 222 P. [2d] 455; *Pinkerton v. Pritchard,* 71 Ariz. 117, 223 P. [2d] 933; *Smith v. Noe,* 159 Tenn. 498, 19 S. W. [2d] 245.) For reasons to appear later in this opinion, it should be borne in mind at this juncture that the criterion of count one's sufficiency to state a cause of action is not the mere making of a false return upon which was bottomed an independent ancillary suit for damages at common law before the statute of 9 Anne, c. 20, but rather a malicious

making thereof with intent to injure as part of the wrongful conduct for the consequences of which the substantive law of damages holds the wrongdoer responsible.

The second question of the two presented relates to the cause of action itself as stated by the second count and is whether it is barred under the doctrine of the election of remedies by the bringing to a successful conclusion of the prior action of mandamus. This question is a novel one in this jurisdiction. The learned trial judge answered it in the affirmative upon the authorities of *Kendall* v. *Stokes*, 44 U. S. 92, 3 How. 86, 11 L. ed. 506; *Smith* v. *Berryman*, 272 Mo. 365, 199 S. W. 165; and *Achey* v. *Creech*, 21 Wash. 319, 58 Pac. 208. The defendant insists that those authorities are controlling. The plaintiff counters that the statutes in Hawaii are controlling and cites authorities which it argues are persuasive and commend themselves to reason. It cites *McGraw* v. *Gresser*, 226 N. Y. 57, 123 N. E. 84; *Grider* v. *Tally*, 77 Ala. 422, 54 Am. Rep. 65; *Talmadge* v. *McDonald*, 44 Ga. App. 728, 162 S. E. 856; *Stiles* v. *Morse*, 223 Mass. 174, 123 N. E. 615; *Rowley* v. *Ferguson*, 48 N. E. (2d) 243 (Ohio App. 1942).

At common law, an injured party would be clearly entitled to recover damages for a public officer's wrongful conduct in refusing to perform a purely ministerial duty even had he acted in good faith. The Supreme Court of the United States succinctly states that well-settled rule as a living part of the law to be "that where [as here] the law requires absolutely a ministerial act to be done by a public officer and he neglects or refuses to do such act, he may be compelled to respond in damages to the extent of the injury arising from his conduct. There is an unbroken current of authorities to this effect. A mistake as to his duty and honest intentions will not excuse the offender." (*Amy* v. *Supervisors*, 11 Wall. 136,

138, 20 L. ed. 101.) The authorities above cited by the plaintiff all support this rule in cases where, as here, the particular public officer had been compelled by peremptory writ in a prior mandamus action to perform the duty which he had refused to perform. Such rule of liability therefore is determinative of the question unless the statutory remedy of mandamus in this jurisdiction is inconsistent with the common-law remedy of damages so as to invoke the doctrine of the election of remedies.

Fundamentally, mandamus is to compel performance and not to recover damages. Consonant thereto, damages are not recoverable in mandamus under the statutes of this jurisdiction. Jurisdictions following the statute of 9 Anne, c. 20, however, permit damages to be recovered in the mandamus proceeding itself. Some courts therein have held that mandamus and an independent action for damages are inconsistent remedies, requiring an election, and that recourse to one barred the other. (*Smith* v. *Berryman, supra*; *Achey* v. *Creech, supra*; *State* v. *Ryan*, 2 Mo. App. 303.) But the basis for so holding is not because of the statutory permission to recover damages in mandamus but because the statutory ground of mandamus in those jurisdictions is inconsistent with the common-law ground of an action for damages, there being no real inconsistency between those remedies themselves. That basis of inconsistency as to grounds rather than as to remedies rests upon principles underlying the doctrines of estoppel and res judicata. Those principles can best be expressed by quoting the following language of Chief Justice Taney in *Kendall* v. *Stokes, supra,* that "Whenever, therefore, a mandamus is applied for, it is upon the ground that [the petitioner] cannot obtain redress in any other form of proceeding. And to allow him to bring another action for the very same cause after he has obtained the benefit of the mandamus would not only

be harassing the defendant with two suits for the same thing but would be inconsistent with the ground upon which he asked for the mandamus, and inconsistent also with the decision of the court which awarded it." Similar language is to be found in the cases above cited following the statute of Anne, *supra.* They, as well as the *Kendall* case, are distinguishable from the case at bar primarily because no inconsistency exists in this jurisdiction between the ground of mandamus and that of an action for damages. In Hawaii, a petitioner's ground of mandamus is not that he cannot obtain redress in any other form of proceeding for the statute recognizes that he may have "other means of relief" and may obtain redress by "ordinary legal forms." (R. L. H. 1945, § 10262. See *Spellman* v. *Wilson,* 28 Haw. 538; *Glover* v. *Fong, Auditor, supra.*) But the essence of his ground is coexistent with the statutory object of mandamus "to prevent a denial of justice * * * where the law has assigned no specific relief by ordinary means or even where a party has other means of relief, if the slowness of ordinary legal forms is likely to produce such a delay, that the public good and the administration of justice will suffer from it, and where justice and reason require that some [extraordinary] mode should exist of redressing [the particular] wrong or abuse" sought to be redressed. (R. L. H. 1945, § 10262.) That ground of summary relief to prevent a denial of justice by an extraordinary mode of redress compelling performance of "some certain act" by a public officer within the statutory definition of mandamus (R. L. H. 1945, § 10261) is not antagonistic to the ground of subsequent relief to further justice by an ordinary legal form holding that officer liable for injuries resulting from his wrongful refusal to perform that act. Obviously, mandamus and damages are not the same cause of action. Nor do they accomplish the same result. On the con-

trary, relief by them are separate and distinct causes of action even though both may involve the same facts. The result in one is performance of an act and that in the other compensation for injuries. The wrong to be remedied in one is a present refusal to perform the act at the time of bringing mandamus and that in the other a past infliction of injuries as a continuing wrong since the wrongdoer first commenced to refuse to perform that act until he performed it. The two remedies are entirely consistent and require no election. Recourse to one does not bar the other. One is the complement to the other and not altogether concurrent in the sense that damages are not recoverable in full until after the misconduct has been terminated while mandamus is maintainable only where it persists at the time. Certainly, the plaintiff may pursue consistent remedies and the statute in granting it the right by mandamus to cut short a continuing misconduct did not intend to take away the consistent right to hold the wrongdoer accountable for the injuries he caused.

The ancient common-law procedure giving rise to an independent ancillary suit upon a false return has little, if any, bearing upon the question under consideration. That procedure arose from the conclusive and untraversable character of a return, whether it be true or false, as the ultimate pleading in mandamus at common law. But such procedure was abolished in 1710 by statute of Anne, *supra,* with respect to mandamus cases against usurpers of municipal office and in 1831 by statute of 1 William IV, c. 21, s. 3, with respect to all mandamus cases. Of decisive historical significance, however, it never became a part of the practice or procedural common law in Hawaii. Nor has a return in Hawaii ever had the conclusive and untraversable character which it had in England before the year of 1710. Consequently, there is no basis

in this jurisdiction upon which to predicate a suit for the mere making of a false return. It is, therefore, immaterial whether the instant action of tort meets the strict requisites of the old common-law concept of a false return. But that does not mean that a cause of action in this jurisdiction may not be bottomed, as here, upon a willful and malicious making of a false return with intent to injure as a part of a persistent and deliberate attempt to evade performance of a purely ministerial duty. On the contrary, all "the promptings of reason and common sense, which are the cardinal principles of the common law," indicate that such misconduct is tortious and actionable. (*Gear* v. *Dole,* 14 Haw. 554, 562.)

The allegations in both counts of the second amended complaint describe a wrongful conduct of the defendant that is willful, malicious and oppressive in which he persisted with the intent to injure the plaintiff and to put it to great expense. Those allegations coupled with the ones describing the injuries proximately resulting from that conduct bring the case clearly within the general rule of liability for actual damages. Such conduct by its very character invokes the doctrine of punitive or exemplary damages within the equally well-settled rule "that in actions of tort punitive damages may * * * be awarded * * * in cases where the defendant 'has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations' * * * or where there has been 'some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.'" (*Bright* v. *Quinn,* 20 Haw. 504, 511, 512.) At this juncture it is pertinent to say that the plaintiff is not seeking to recover as actual damages any taxable costs or "the cost of the proceeding" which were payable to it in the prior mandamus action and therefore properly excepted from the

elements of actual damages. (R. L. H. 1945, § 10267.) But it is seeking to recover as actual damages the loss of use of money, measured at the legal rate of interest on the sums for which the warrants were made payable to it during the period of the defendant's misconduct, and the incurrence of attorney's fees and other expenses of litigation to compel performance, measured by their reasonableness and necessity. Within the principle of proximate causation, that loss and those expenses are alleged to be the immediate results of the defendant's wrong-doing as well as its injurious consequences which he not only should have anticipated but actually intended according to the allegations under both counts of the complaint. All these alleged injuries were suffered by the plaintiff not through any misfeasance or fault of its own but wholly by reason of the defendant's willful and malicious misconduct.

The willful and malicious misconduct of the defendant as alleged may be compared to the comparable misconduct on which is based an action for malicious prosecution. One misconduct in effect maliciously invites and aggravates litigation and the other maliciously prosecutes it for the same purpose of intended harassment. Each misconduct constitutes the same character of malicious tort which brings the injured party into a court of law wherein he ordinarily must engage the services of an attorney and incur other expenses of litigation in order to enforce or protect his rights. Those legal expenses may be awarded as compensatory damages to the plaintiff in an action for malicious prosecution. (*Soffos* v. *Eaton*, 152 F. [2d] 682; *American Optometric Ass'n* v. *Ritholz*, 101 F. [2d] 883; *Curls* v. *Lenox Garage Co.*, 68 Ohio App. 285, 40 N. E. [2d] 213; *Smith* v. *Transamerican Freight Lines*, 72 Ohio App. 239, 51 N. E. [2d] 208. See also 34 Am. Jur. 762, Malicious Prosecution, § 96. Compare with

*Stiles* v. *Morse,* 223 Mass. 174, 123 N. E. 615.) By analogy, they may be likewise awarded in the instant action. That analogy further serves to illustrate the complete absence of any inconsistency between mandamus to compel performance of an act maliciously refused and damages to compensate the injured party and to punish the offender.

Both questions presented are answered in the negative.

Order sustaining demurrer reversed and cause remanded for further proceedings consistent with this opinion.

*H. Y. C. Choy* (*Fong, Miho, Choy & Chuck* on the brief) for defendant in error.

*F. D. Padgett* (*Robertson, Castle & Anthony* with him on the briefs) for plaintiff in error.